UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————X

**SID BOYS CORP. d/b/a KELLOGG's DINER, DEN
KITCHEN d/b/a PARKWAY DINER and
143 CAFE INC. d/b/a TOSCANA,**

                    **Plaintiffs,**              **MEMORANDUM OF LAW**

Against                           Civil No.: 1:20-cv-06249

**ANDREW M. CUOMO, in his Official Capacity as
Governor of the State of New York, ATTORNEY GENERAL
of the STATE OF NEW YORK, and THE STATE
OF NEW YORK,**
                    **Defendants.**

———————————————————————X

**THE MERMIGIS LAW GROUP, P.C.**
James G. Mermigis, Esq.
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

*Attorneys for Plaintiffs*

1

## PRELIMINARY STATEMENT

The Supreme Court very recently noted that, "even in a pandemic, the Constitution cannot be put away and forgotten." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 WL 6948354, at 3* (U.S. November 25, 2020) (*"Brooklyn Diocese v. Cuomo"*).

In reversing *South Bay United Pentecostal Church v. Newsom*, 140 Sup. Ct. 1613 (2020), the Supreme Court in *Brooklyn Diocese v. Cuomo* opined that, "*At that time, Covid had been with us, in earnest for just three months. Now, as we round out 2020 and face the prospect of entering a second calendar year living in the pandemic's shadow, that rationale has expired according to its own terms. Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical.*"

Arbitrary and irrational classifications are not constitutional. "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

The substantive component of the Due Process Clause "limits what the government may do in both its legislative and its executive capacities." *County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1988). Specifically, substantive due process protection prohibits the government from taking action that "shocks the conscience" or interferes with rights implicit with the concept of ordered liberty." *United States v. Salerno,* 481 U.S. 739, 746 (1987).

Despite rounding out 2020, Governor Cuomo continues to enforce strict shutdowns on Plaintiffs with no end or guidance in sight. The Plaintiffs are restaurants in New

York City that were arbitrarily, randomly and irrationally shutdown by Governor Cuomo on December 14, 2020 by Executive Order 202.81. The restaurants are on the brink of extinction.

This civil rights action challenges the executive "shut down" order 202.81 issued by Governor Andrew M. Cuomo which shut down "indoor dining" again in New York City on December 14, 2020 for a *second time* and more importantly, at the beginning of the holiday season.

In an arbitrary and capricious manner, Defendant Cuomo issued Executive Order 202.81, which is inconsistent with the State's own statistical and health data.

Executive Order 202.81 is causing immeasurable, immediate and irreparable harm to owners of restaurants, already devastated by nearly ten months of closures and severe restrictions, and are on the verge of financial ruin. In addition, employees of all restaurants and bars have been laid off at the beginning of the holiday season.

Casinos, Malls, Department Stores, Gyms, Catering Halls, Bowling Alleys, Liquor Stores, Bakeries, BJ's Warehouse, Target stores, Walmart, Restaurants outside New York City and countless others are allowed to operate indoors, but the *New York City Restaurant and Bar* industry has been ordered to shutdown its *indoor dining* right before the holidays without any scientific basis.

This preliminary injunction motion seeks injunctive relief for deprivations sustained and continued to be sustained by plaintiffs and for violations committed by Defendants, acting under the color of state law, against Plaintiffs' rights as guaranteed by the Fourteenth Amendment of the United States Constitution.

3

Defendant Cuomo's irrational, fear-driven, non-scientific Executive Order 202.81 also violates the Due Process Clause of the United States Constitution by unjustifiably denying Plaintiffs their right to pursue their profession and earn a livelihood.

Defendant Cuomo's Executive Order 202.81 continues to treat the *New York City Restaurant and Bar* industry differently than restaurants and bars bordering New York City and differently and disparately from other New York City businesses and indoor spaces such as Casinos, Malls, Bowling Alleys, Museums, Department Stores and Liquor Stores.

## STATEMENT OF FACTS

On January 13, 2020, a State Supreme Court Judge in Erie County granted a preliminary injunction in favor of (100) one hundred Buffalo area restaurants and stated that "the State had no *"rational basis"* for imposing such strict guidelines on restaurants in certain areas, while restaurants operating in other areas with higher Covid-19 hospitalization rates have been allowed to continue indoor dining service." New York City continues to have the second lowest infection rate (5.7%) in the State yet "indoor dining" continues to be shutdown in New York City, while adjacent locales like Westchester (6.8%) and Long Island (7.8%) infection rates are filling restaurants at 50% indoor capacity.

On March 16, 2020, Plaintiff, and all others similar situated, were ordered by Defendants' Executive Order 202.3 to *cease serving patrons food or beverage on-premises effective at 8pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption.* (See Executive Order 202.3 as Exhibit A). Target, Walmart, Liquor

Stores, Bicycle Shops and Home Depot were allowed to remain open for on premises shopping as "Essential" businesses.

"Essential businesses" were subject to neither the in-person restrictions of Governor Cuomo's executive orders nor the closings and in-person restrictions of subsequent executive orders.

Plaintiffs' health protocols are sufficiently similar to those businesses that were allowed to remain open.

What were initially billed as temporary measures necessary to "flatten the curve" and protect hospital capacity have become open-ended and ongoing restrictions aimed at a very different end- stopping the spread of an infectious disease and preventing new cases from arising-which requires ongoing and open-ended efforts.

Defendants' Executive Order 202.3 and the executive orders that followed did not provide a pre- or post- deprivation remedy to question a designation of "essential" or to determine whether Plaintiffs can open *"indoor dining"* with the same health related protocols as the "essential" businesses allowed to open.

There was a list of businesses that were allowed to remain open for on-premises purchasing and that the classification was not reasonable or rational and was arbitrary and random without any data, and therefore a denial of due process.

Defendants, as set forth in the Executive Shutdown Orders, declared the ability to control the movement of residents of the State of New York, and to order that citizens of the State not utilize their private property, without providing the citizens prior notice nor an opportunity to be heard, and without providing just compensation.

On June 13, 2020, Governor Cuomo issued Executive Order 202.41. (See Executive Order 202.41 attached as Exhibit B.)  Executive Order 202.41 opened "indoor dining" for restaurants and bars outside New York City.

On June 13, 2020, Governor Cuomo arbitrarily decided to keep New York City Restaurants shutdown for "indoor dining" despite the data and science showing otherwise. The covid-19 infection rate in Manhattan on June 13, 2020 was .8%.

https://forward.ny.gov/percentage-positive-results-county-dashboard

Re-opening guidelines for Restaurants outside of New York City were issued by the State of New York. Accordingly, all employees must wear masks and indoor capacity was limited to no more than 50% of maximum capacity. (See Reopening New York Guidelines attached as Exhibit C.)

On June 25, 2020, Governor Cuomo said the following on CNN: *"What we're saying in New York, look, we did the right thing and New Yorkers paid a terrible cost as you know, Alyson. They have been locked up. They have been closing their businesses. We have the virus under control finally. We had to flatten the curve."*[1] (See attached transcript as Exhibit D.)

Despite Governor Cuomo's comments on June 25, 2020 that the "*virus was under control*" and "*the curve was flat*", "indoor dining" in New York City remained shut.

On July 6, 2020, Governor Cuomo announced that New York City would enter Phase III of re-opening *without* "indoor dining." The New York City region is the only region in New York State that does not allow indoor dining in restaurants and bars. (See Executive Order 202.48 attached as Exhibit E.)

_____

[1] Audio & Rush Transcript: Governor Cuomo announces New York at Lowest Hospitalization Rate since Beginning of Covid-19 Pandemic. June 25, 2020.

On July 6, 2020, New York City had an infection rate of 1.0% and a 14-day rolling average infection rate of 1.1%. The science and data did not support the continued shutdown of New York City restaurants and bars.

https://forward.ny.gov/percentage-positive-results-region-dashboard

Absent from the Executive Orders issued by Governor Cuomo is any provision addressing the inherent financial burden inflicted by the Defendants on restaurants throughout New York City.

According to the August 2020 Rent Report issued by the NYC Hospitality Alliance, 83% of NYC restaurants and bars could not pay rent in July and 87% of NYC restaurants and bars could not pay their rent in August. (See August 2020 Rent Report attached as Exhibit F.)

For the entire month of August, 2020, New York City had an average infection rate of under 1.0% and the hospitalizations were at pre-covid lows, yet New York City was the only region in New York State that was not permitted to operate indoor dining in restaurants and bars.

https://forward.ny.gov/daily-hospitalization-summary-region

The data and science did not support this continued shutdown of indoor dining in New York City.

https://forward.ny.gov/percentage-positive-results-region-dashboard

Finally, On September 9, 2020, Governor Cuomo signed Executive Order 202.61 which modified the previous directives and which will now allow indoor food services and dining in New York City beginning September 30, 2020, so long as Department of Health and

any other applicable state-issued guidance is strictly adhered to. (See Executive Order 202.61 attached as Exhibit G.)

Re-opening guidelines for New York City restaurants and bars were issued by the State of New York. Accordingly, New York City restaurants and bars would be subject to the following harsh restrictions:

a.   all employees must wear masks;

b.   indoor capacity was limited to no more than 25% of maximum capacity;

c.   all employees and patrons will have their temperature checks taken before entry;

d.   one person from each party would have to sign in before or upon entry and provide full name, address and phone number for use in contact tracing efforts;

e.   Prohibit seating and service at bars; and

f.   Mandatory health screening of employees.

(See Reopening New York City Guidelines attached as Exhibit H.)

The aforementioned guidelines for New York City restaurants were *significantly more severe* than restaurants outside of New York City which did not require temperature checks, contact tracing, indoor capacity was limited to 50% of maximum capacity as opposed to 25% capacity for New York City restaurants and bars and patrons can sit and eat at the bar.

There was no rational basis for subjecting New York City restaurants and bars to greater restrictions and longer closings. These restrictions were not supported by data or science.

Even though there is no difference in the risk of covid-19 transmission between an indoor restaurant in Queens and one in Yonkers, Albany or Buffalo, the restaurants and bars in New York City are treated differently under law without a rational basis.

As a general matter, "essential businesses" have been able to operate largely unfettered by State restriction- with generally no limits on occupancy of indoor space, nor restriction on entry to ostensibly healthy individuals, nor requirements that entrants provide information for contact tracing purposes.

On November 25, 2020, Governor Cuomo said that he expected infection rates to rise during Thanksgiving at his Press Conference, "*Thanksgiving will be an added accelerant because people travel and there's more social activity. I'm going home to see my family. The travel is way up and we're going to see an increase post-Thanksgiving. We expect that.*" (See November 25,  2020 Transcript attached as Exhibit I.)

On November 30, 2020, Governor Cuomo said, "*The bars and restaurant protocols and restrictions have had an effect, we've seen a reduction in the level of spreads from bars and restaurants.*" Governor Cuomo also said that, "*Family gatherings and smaller social gatherings have exploded as places where the virus is spreading.*" Cuomo also made an admission that "*the valve no longer controls the spread,*" meaning that he has no way of controlling the spread since the virus is spreading in people's homes.  https://www.governor.ny.gov/news/governor-cuomo-announces-winter-plan-combat-covid-19-surge-new-york-state

On December 1, 2020, Governor Cuomo said the situation now is much different than it was in March. The Governor was talking about the rate of transmission when he stated the

following: "*The rate of transmission last March was about five, meaning one person was infecting five other people. Our rate of transmission is now about one. So it is a much, much different situation that where we were in March, and our rate of transmission is much lower. But the difference between five and one is all the difference in the world.*" Cuomo also said, "*Our rate of increase in hospitalizations is nothing like it was back in March. That was an extraordinarily type of growth that we are just not seeing now. The rate of growth is nowhere close to what it was back in March."*

https://www.rev.com/blog/transcripts/ny-gov-andrew-cuomo-teleconference-briefing-transcript-december-1

Governor Cuomo praised New Yorkers in his December 2, 2020 Press Conference by saying, "*We have a lower percentage of hospitalizations, lower percentage of hospitalization increase, less burden on our hospitals pro rata, less of a hospital emergency than the other states because New Yorkers have been smart.*"

https://www.rev.com/blog/transcripts/new-york-gov-andrew-cuomo-covid-19-press-conference-transcript-december-2

On Monday, December 7, 2020, Governor Cuomo said that the hospitalization rate was lower in New York City than in upstate New York. Cuomo said, "*You come down to New York City, we actually have a lower rate hospitalized than upstate, which is an exact flip of where we were in the Spring. Spring, we had a largely downstate situation and upstate the situation was much better.*" Governor Cuomo also stated that "*New York still had one of the lowest positivity rates in the nation and our worst region is still lower than 41 states.*"

https://www.rev.com/blog/transcripts/new-york-gov-andrew-cuomo-covid-19-press-conference-transcript-december-7

On December 9, 2020, Cuomo admitted that the guidelines on indoor dining have been working when he said the following, "*We do have data on where the spread is coming from, and we do have data on the amount of spread coming from indoor dining. They are right that it's not as bad as it was, but it's not as bad because we put significant restrictions on indoor dining. And when you reduce the capacity and you have masks and you have plexiglass partitions, yes we have reduced the numbers.*"

https://www.rev.com/blog/transcripts/new-york-gov-andrew-cuomo-covid-19-press-conference-transcript-december-9

On December 11, 2020, Governor Cuomo provided a chart containing statewide contact tracing data. (Please see chart attached as Exhibit J.) This chart indicated that private household gatherings are driving the spread at 74%. The chart also suggested that restaurants and bars are not the cause of the covid-19 spread because they only bore a 1.43% share of exposure source.

Despite the expansive data that conveys that New York City restaurants are not the source of spread, Governor Cuomo delivered a fatal blow to the New York City restaurant industry when Governor Cuomo signed Executive Order 202.81 which suspended authorization for indoor dining within New York City effective on Monday, December 14, 2020. (See Executive Order 202.81 attached as Exhibit K.)

On December 11, 2020, New York City had the second lowest infection rate in the State at 3.7%. Long Island had an infection rate at 5.2%. Westchester County had an infection

rate of 5.6%. Manhattan had an infection rate of 2.6%, which was half the infection rate of Long

Island and more than half of the infection rate of Westchester. Despite the staggering numbers,

restaurants on Long Island and Westchester continue to operate at 50% capacity with indoor

dining.

https://forward.ny.gov/percentage-positive-results-region-dashboard

      The infection rate and curve has remained flat in Manhattan. The infection rate

was 2.2% on November 17, 2020 and 2.1% on December 19, 2020, despite having the highest

population density in New York State. (Please see chart provided as Exhibit L.)

      World renowned Stanford University epidemiologist Dr. Jayanta Bhattacharya has

opined that "restaurants in New York City can safely permit indoor dining to occur on their

premises by continuing to follow the guidelines set forth by the State of New York."

(See Declaration of Dr. Jayanta Bhattacharya ¶ 24.)

      "As long as the affected restaurants comply with New York City reopening

guidelines, merely having dense indoor spaces outside of the affected restaurants does not create

greater risk of covid-19 transmission inside the spaces of the affected restaurants."

(See Declaration of Dr. Jayanta Bhattacharya ¶ 42.)

      "The key reason is that the reopening guidelines require that New York City's

restaurants check potential patrons for symptoms consistent with covid-19 disease, permitting

people without symptoms to enter the premises and dine indoors. Numerous lines of evidence

establish that SARS-CoV-2 infected patients with no symptoms are much less efficient at

spreading the disease than people with symptoms. A meta-analysis of 54 studies from around the

world found that within households- where none of the safeguards that restaurants are required to

apply are typically applied- symptomatic patients passed the disease to household members in 18% of instances, while asymptomatic passed on the disease to household members in .7% of instances." (See Declaration of Dr. Jayanta Bhattacharya ¶ 42.)

"Moreover-and significantly- prohibiting indoor dining in New York City raises the likelihood of uncontrolled private indoor gatherings, which carry with them a substantially higher risk of transmission of the virus if precautions are not taken." (See Declaration of Dr. Jayanta Bhattacharya ¶ 40.)

"By prohibiting indoor on-premises dining and doing so throughout the City of New York, the State of New York is imposing stricter requirements than necessary. However, it is doing so without scientific justification for imposing such stricter requirements on these activities. The data available does not contain any epidemiological or other model that shows that, for example, prohibiting indoor dining in New York City has any relationship whatsoever to avoiding circumstances that, "challenge our health care delivery system's ability to surge with space, supplies and staff," does not compare hospitalization forecasts against hospital capacity in light of prohibitions on indoor dining, does not account for the possibility of transfers of patients across to other counties, nor account for the possibility of building and staffing field hospitals in overstretched areas. Absent modeling that makes explicit assumptions about these details, the claimed benefits of restricting indoor dining as the State of New York has purported to do lacks adequate justification." (See Declaration of Dr. Jayanta Bhattacharya ¶ 29.)

"Though I have read many of the contact tracing studies in the scientific literature that document the most common sources of spread of COVID infection, I am aware of no evidence to suggest that indoor dining is more likely to result in the spread of the COVID-19

13

virus than the permitted venues such as casinos, malls, bowling alleys, museums, Target stores,

Walmart - including private gatherings- that remain permissible and, in fact, will be more likely

in the event that this order remains in effect."

(See Declaration of Dr. Jayanta Bhattacharya ¶ 25.)

        In light of the data and expert analysis, there is no rational or conceivable basis

for determining that treating restaurants and malls, casinos, bowling alleys, department stores

differently in New York City was justified.

        Without scientific justification or data, the Defendants have treated New York

City restaurants differently than restaurants operating in counties bordering New York City.

There was no rational basis provided for shutting down New York City indoor dining and

keeping restaurants throughout the state open.

**POINT I**

## PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

      To obtain a preliminary injunction, plaintiffs must demonstrate: (1) irreparable injury; (2)

a likelihood of success on the merits; (3) a balance of equities tipping in the moving party's

favor; and (4) that the public interest would not be disserved by injunctive relief. See *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Glossip v. Gross,* 576 U.S. 863, 876 (2015);

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,

598 F.3d 30, 35 n.4 (2d Cir. 2010). For the reasons explained below, the plaintiffs satisfy each of

these four elements required to issue a preliminary injunction. Therefore, this Court should issue

an order enjoining enforcement of Executive Order 202.81 and an Order declaring Executive Order 202.81 as unconstitutional.

### A.      Plaintiffs are Suffering Irreparable Harm.

"Various estimates project that during the next six months to a year, one-third to one-half of the City's restaurants and bars that existed prior to the pandemic may close permanently. If one-third of them close, the city would lose nearly 8,000 establishments in the industry, and 106,000 jobs. If the closures rose to 50 percent, nearly 12,000 restaurants and bars would shutter and almost 159,000 jobs would be lost." (Office of the New York State Comptroller Official Report, "The Restaurant Industry in New York City: Tracking the Recovery" attached as Exhibit M).

The Second Circuit has repeatedly found that the showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 233-34 (2d Cir. 1999); *accord Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020). The court can presume irreparable injury where it is alleged that a constitutional right has been violated. See, e.g., *Yang*, 960 F.3d at 128; *Beal v. Stern,* 184 F.3d 117, 123-24 (2d Cir. 1999) (presuming irreparable harm and proceeding directly to likelihood-of-success standard where constitutional right violations were alleged); *Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996) ("it is the alleged violation of a constitutional right that triggers a finding of irreparable harm," as such "a harm that cannot be adequately compensated monetarily") (emphasis in original) (citations omitted).

As explained below, plaintiffs are able to show a likelihood of success on the merits for their equal protection claim, which merits a presumption of irreparable harm. Indeed, analogous to *Jolly,* it is proper for this Court to presume irreparable injury by the mere fact that the plaintiffs allege in their complaint a violation of their equal protection rights. As the Second Circuit held in *Jolly,* it is beyond question that the denial of plaintiffs' equal protection rights "is a harm that cannot be adequately compensated monetarily." Thus, by demonstrating below a likelihood of success regarding plaintiffs' equal protection claim, this Court may similarly find that plaintiffs have made a "strong" showing of irreparable harm. See *Yang,* 960 F.3d at 128.

In addition, Second Circuit courts have held that the "significant possibility" that plaintiffs may be driven out of business in the period before a trial can be held is sufficient to find that the irreparable harm prong has been satisfied. *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 58 (2d Cir. 1979) ("[t]here can be no doubt that if the [applicant] had shown a significant possibility that it would be driven out of business in the period before a trial could be held, the *Hamilton-Benrus* test would have been amply passed"). Indeed, the Second Circuit has expanded the *Hamilton* test to include "major disruption of business" and a "threat to the continued existence of a business." *Nemer Jeep-Eagle, Inc. v. Jeep Eagle Sales Corp.*, 992 F.2d 430, 435-36 (2d Cir. 1993) (emphasis in original).

Beyond harm to constitutional rights, a "substantial loss of business and perhaps even bankruptcy" absent preliminary injunctive relief shows "irreparable injury." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d 922, 930 (Fed. Cir. 2012).

Defendants' orders requiring the shut down of indoor dining  in New York City for a second time after being  and with no end in sight is causing an existential crisis for the *restaurant* industry in New York City.

Here, the plaintiffs allege in their complaint that the shut down of their "*indoor dining*" has resulted in devastating economic loss.  "My Diner was arbitrarily and randomly shut down by Defendants for a second time on December 14, 2020. Each day that my business is subject to the continued shut down results in irreparable and devastating economic loss and, each day that this wrong is allowed to persist is one day closer to permanently shutting my doors. I will not be able to make it beyond February 1, 2021 and will file for bankruptcy." (Declaration of Irene Siderakis, ¶ 2). "I have not been able to pay rent since June and owe my landlord about $160,000 at the present time." (Declaration of Irene Siderakis,  ¶ 5). "I had to lay off twenty of my loyal employees and a lot of my former brunch customers now eat brunch at Long Island restaurants, since indoor dining is allowed on Long Island." (Declaration of Irene Siderakis, ¶ 7).

"If I file for bankruptcy, I will lose a $325,000 investment in the business and the diner will close for good." (Declaration of Nick Kontos, ¶ 3). "My business is down 75% and have not been able to pay rent since June." (Declaration of Nick Kontos, ¶ 4-5). "I had to lay off 75% of my employees and all of my brunch customers now eat brunch at Long Island restaurants, since my diner is one mile from the Nassau County border." (Declaration of Nick Kontos, ¶ 6). "Restaurants are thriving one mile east from my Diner. It is arbitrary, irrational and random that restaurants one mile east from my Diner can have indoor dining but my Diner is closed."  (Declaration of Nick Kontos, ¶ 7).

"I am afraid that if this mandate remains in effect I will lose my client base to restaurants in Long Island and Washington, that are open for indoor dining at 50% capacity. These restaurants are just miles from the city and easily accessible to New York City residents." (Declaration of Driton Mila, ¶ 13). "If Governor Cuomo's mandate goes into effect during the busiest time of year, I will lose my livelihood, I won't be able to support my family, will lose my customer base, the goodwill that my restaurant has cultivated and I will lose a restaurant that I worked hard to build with no hope of recovery. My employees will also lose their livelihood." (Declaration of Driton Mila, ¶ 14).

Thus, the plaintiffs have made a strong showing of irreparable harm. Plaintiffs are suffering and will continue to suffer substantial and irreparable harm unless this Honorable Court declares that Defendant Governor Cuomo's Executive Order 202.81 is unlawful, and enjoins further enforcement of Executive Order 202.81

**B. Plaintiffs are Likely to Prevail on the Merits of Their Equal Protection Claim**.

On January 13, 2020, State Supreme Court Judge Henry Nowak in Erie County granted a preliminary injunction in favor of (100) one hundred Buffalo area restaurants and stated that "the State had no *"rational basis"* for imposing such strict guidelines on restaurants in certain areas, while restaurants operating in other areas with higher Covid-19 hospitalization rates have been allowed to continue indoor dining service." (Please see Judge Nowak's Decision attached as Exhibit N). On December 11, 2020, New York City  had the second lowest infection rate in the State yet "indoor dining" was ordered to be shutdown in New York City, while adjacent locales

like Westchester and Long Island had higher infection rates, yet were allowed to operate restaurants at 50% indoor capacity. There was no rational basis for Executive Order 202.81 on December 14, 2020 and no rational basis now.

The rational basis test is forgiving, but not toothless. Arbitrary or irrational classifications are not constitutional. "The state may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

The Plaintiffs can demonstrate a likelihood of success because there have been three additional recent decisions that all granted preliminary injunctions to businesses in New York State that were fighting to open their businesses against the State shutdowns. None of the cases involved heightened scrutiny. All cases were decided on equal protection rational basis analysis. The State Attorney General's office defended each of these decisions.

In *Zoom Tan, Inc. v. Governor Cuomo, et al,* Index No. 815019/2020, State of New York Supreme Court, County of Erie (December 7, 2020), Erie County Supreme Court Judge Diane Y. Devlin granted Plaintiff's motion for Preliminary Injunction and Ordered that Zoom Tan can open. (See Attached Zoom Tan Decision as Exhibit O.) Judge Devlin stated that "*managing a pandemic does not necessarily mean that Constitutional rights are to be discarded, or in this case, not given proper scrutiny for shuttering a business that employs members of the general public and provides a benefit that their customers enjoy.*" (Zoom Tan Decision and Order pg. 4). Judge Devlin also stated that, "*It is further arbitrary and capricious that the Department of Health would shut Petitioner down without indicating any reasons as to why its business model or practices have a high risk of spreading the virus while permitting malls, retail stores and*

19

*movie theaters to remain open.*"(Zoom Tan Decision and Order pg. 6). The State Defendants have not provided any scientific evidence which will show that these Plaintiffs' specific billiards halls pose a threat or risk of covid spread or infection. The State has not provided any reasons or scientific proof why malls, casinos, bowling alleys, department stores, churches, Walmart and other businesses can legally operate while Plaintiffs' billiards halls remain shut.

In *Lasertron, Inc. v. Empire State Development et al.,* Index No. 813573/2020, State of New York Supreme Court, County of Erie (January 4, 2021), State Supreme Court Judge Emilio Colaiacovo granted Plaintiff's motion for a Preliminary Injunction and Ordered that Lasertron can reopen. (Please see Memorandum Decision as Exhibit P.) "*While its understood that recommendations of those in the public health field should be given considerable weight, this does not mean that **carte blanche** is generously given to governmental authorities without redress or review. Even Dr. Blog's affidavit is replete with dismissive conclusions that, while perhaps of interest in academia, are of little comfort to businesses that are forced to see their source of income and support for their families, let alone that of their employees, vanish.*" (Judge Emilio Colaiacovo Memorandum Decision pg. 14-15).

"*Respondents offered no evidence or credible theory that would otherwise support such closures.*"  (Judge Emilio Colaiacovo Memorandum Decision pg. 16). "*Respondent relies heavily on <u>Jacobson</u> to justify its expansive and sweeping powers. However, <u>Jacobson</u> is hardly the super-precedent that it is purported to be. The 1905 case addresses a challenge to a state law that required residents to be vaccinated against smallpox or pay a $5 fine. The burden in Jacobson was fairly modest - either get vaccinated or pay a fine. Here the burden is unlimited, as the result of the closure and the forfeiture of your business and livelihood.*"  (Judge Emilio

Colaiacovo Memorandum Decision pg. 17). Defendants like in *Lasertron*, did not offer any evidence or credible theory that would support the closure of billiards halls.

Judge Colaiacovo quotes Justice Gorsuch in Roman Catholic Diocese v. Cuomo,

*"Why have some mistaken this Court's modest decision in Jacobson for a towering authority that overshadows the Constitution during a pandemic? In the end, I can only surmise that much of the answer lies in a particular judicial impulse to stay out of the way in the times of crisis. But if that impulse may be understandable or even admirable in other circumstances, we may not shelter in place when the Constitution is under attack. Things never go well when we do."* (Judge Emilio Colaiacovo Memorandum Decision pg. 17).

*"The haphazard manner in which the Respondents applied executive orders forced the closure of this business, which left it without redress. The Court must not shy away from performing their independent and constitutionally required role in reviewing the decisions of the State so as to ensure that government does not take its broad authority to a point of abuse. Judicial deference has its limits."* (Judge Emilio Colaiacovo Memorandum Decision pg. 18).

In *Athletes Unleashed, Inc. v. Andrew Cuomo, et al.*, Index No. 815246, Supreme Court of the State of New York, County of Erie (December 29, 2020), State Supreme Court Judge Paul B. Wojtaszek granted Plaintiff's motion for a preliminary injunction and allowed Plaintiff to open at full capacity. (Please see Order and Transcript as Exhibit Q.) "This will be referred to as the right to normalcy, and while that right cannot always be perfectly guaranteed, it is a right that we must do our utmost to respect, even as we labor in the shadow of a pandemic." (Judge Wojtaszek, Official Transcript pg. 4, December 23, 2020.)

The Equal Protection Clause of the Fourteenth Amendment requires that every state regulation be at a minimum rationally related to a legitimate governmental interest.

Arbitrary and irrational classifications are not constitutional. "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 446 (1985).

The Fourteenth Amendment of the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

Defendant Cuomo issued Executive Order 202.81 in an arbitrary and capricious manner, which was inconsistent with the State's own statistical and health data.

On December 11, 2020, Governor Cuomo provided a chart containing statewide contact tracing data. (Please see chart attached as Exhibit J.) This chart indicated that private household gatherings are driving the spread at 74%. The chart also suggested that restaurants and bars are not the cause of the covid-19 spread because they only bore a 1.43% share of exposure source.  On December 11, 2020, New York City had the second lowest infection rate in the State at 3.7%. Long Island had an infection rate at 5.2%. Westchester County had an infection rate of 5.6%. Manhattan had an infection rate of 2.6%, which was half the infection rate of Long Island and more than half of the infection rate of Westchester. Despite the staggering numbers, restaurants on Long Island and Westchester could continue to operate at 50% capacity with indoor dining. There was no rational basis for Defendants to shut down indoor dining in New York City when they had no scientific basis and the data stated otherwise. This decision was random, arbitrary and irrational and should be reversed immediately.

The Defendants continue to govern impartially, irrationally and arbitrarily by allowing Malls, Casinos, Bowling Alleys, Liquor Stores, Department Stores, Gyms in New York City to remain open while indoor dining in New York City restaurants is shutdown.

The Defendants continue to govern impartially, irrationally and arbitrarily by allowing restaurants throughout the State to remain open at 50% indoor capacity while indoor dining in New York City restaurants is shutdown.

The shutdown of indoor dining in New York City is arbitrary and irrational. The infection rate and curve has remained flat in Manhattan. The infection rate was 2.2% on November 17, 2020 and 2.1% on December 19, 2020, despite having the highest population density in New York State. (Please see chart provided as Exhibit L.)

"Now, as we round out 2020 and face the prospect of entering a second calendar year living in the pandemic's shadow and even if the. Constitution has taken a holiday during this pandemic, it cannot be a sabbatical." *Roman Catholic Diocese v. Andrew M. Cuomo et al*., 592 U.S. _____ (2020).

As stated above, the shutdown of Plaintiffs' restaurants refute the State's data and are not rationally related to the State's legitimate interest in reducing the spread of covid-19.

There is not a rational distinction grounded in public health between restaurants and malls, casinos, bowling alleys, department stores, liquor stores and gyms in New York City.

There is not a rational distinction grounded in public health between restaurants outside of New York City and restaurants in New York City.

Plaintiffs have been denied equal protection of the laws because there is no rational basis to treat New York City restaurants differently than similarly situated casinos, malls,

bowling alleys, department stores, Walmart, gyms and restaurants outside of New York City, by forcing New York City restaurants to close indoor dining while allowing the aforementioned similarly situated businesses to remain open.

## II. There is No Rational Basis for Treating the Plaintiffs Differently.

World renowned Stanford University epidemiologist Dr. Jayanta Bhattacharya has opined that "restaurants in New York City can safely permit indoor dining to occur on their premises by continuing to follow the guidelines set forth by the State of New York." (See Declaration of Dr. Jayanta Bhattacharya ¶ 24.)

"As long as the affected restaurants comply with New York City reopening guidelines, merely having dense indoor spaces outside of the affected restaurants does not create greater risk of covid-19 transmission inside the spaces of the affected restaurants." (See Declaration of Dr. Jayanta Bhattacharya ¶ 42.)

"The key reason is that the reopening guidelines require that New York City's restaurants check potential patrons for symptoms consistent with covid-19 disease, permitting people without symptoms to enter the premises and dine indoors. Numerous lines of evidence establish that SARS-CoV-2 infected patients with no symptoms are much less efficient at spreading the disease than people with symptoms. A meta-analysis of 54 studies from around the world found that within households- where none of the safeguards that restaurants are required to apply are typically applied- symptomatic patients passed the disease to household members in 18% of instances, while asymptomatic passed on the disease to household members in .7% of instances." (See Declaration of Dr. Jayanta Bhattacharya ¶ 42.)

"Moreover-and significantly- prohibiting indoor dining in New York City raises the likelihood of uncontrolled private indoor gatherings, which carry with them a substantially higher risk of transmission of the virus if precautions are not taken."
(See Declaration of Dr. Jayanta Bhattacharya ¶ 40.)

"By prohibiting indoor on-premises dining and doing so throughout the City of New York, the State of New York is imposing stricter requirements than necessary. However, it is doing so without scientific justification for imposing such stricter requirements on these activities. The data available does not contain any epidemiological or other model that shows that, for example, prohibiting indoor dining in New York City has any relationship whatsoever to avoiding circumstances that, "challenge our health care delivery system's ability to surge with space, supplies and staff," does not compare hospitalization forecasts against hospital capacity in light of prohibitions on indoor dining, does not account for the possibility of transfers of patients across to other counties, nor account for the possibility of building and staffing field hospitals in overstretched areas. Absent modeling that makes explicit assumptions about these details, the claimed benefits of restricting indoor dining as the State of New York has purported to do lacks adequate justification." (See Declaration of Dr. Jayanta Bhattacharya ¶ 29.)

"Though I have read many of the contact tracing studies in the scientific literature that document the most common sources of spread of COVID infection, I am aware of no evidence to suggest that indoor dining is more likely to result in the spread of the COVID-19 virus than the permitted venues such as casinos, malls, bowling alleys, museums, Target stores, Walmart - including private gatherings- that remain permissible and, in fact, will be more likely in the event that this order remains in effect." (See Declaration of Dr. Jayanta Bhattacharya ¶ 25.)

In light of the data and expert analysis, there is no rational basis for determining that treating restaurants and malls, casinos, bowling alleys, department stores differently in New York City was justified or treating New York City restaurants differently than restaurants outside of New York City was justified.

### C.      Balance of Equities Weighs in Favor of the Plaintiffs

"A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *Ligon v. City of New York*, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing of "hardship imposed on one party" and "benefit to the other" as "balance[ing] [of] the equities"). With respect to balancing the hardships, economic or financial hardships have been sufficient to tip the scales in favor of granting a preliminary injunction. See, e.g., *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp. 2d 321, 333-34 (S.D.N.Y. 2009). Furthermore, when an injunction is sought to stay enforcement of a law that is purported to protect the public interest, the hardship to the non- movant government can be measured by the extent to which the law furthers such protection. See *Ass'n of Jewish Camp Operators v. Cuomo,* 1:20-CV-0687, 2020 WL 3766496, at *4 (N.D.N.Y. July 6, 2020)

According to her sworn declaration, plaintiff Irene Siderakis took pictures of food courts in a mall on Long Island. The pictures showed that the mall was at full capacity with very little social distancing and not many other restrictions in place. According to his sworn declaration, plaintiff Nick Kontos took a picture while eating brunch with his family at a restaurant in Nassau

county just minutes east of his Diner which is shutdown by Executive Order 202.81. The picture showed that the restaurant was thriving just a few miles east of Plaintiff's Diner. The restaurant appeared to be operating at close to full capacity. (See Pictures attached as Exhibit R). How can the threat to public health outweigh the harm caused to Plaintiffs' rights when these pictures taken by Plaintiffs depict many people eating indoors minutes from New York City without much social distancing or restrictions and above maximum capacity?

Here, as explained above, absent an injunction the plaintiffs' equal protection rights will be violated. In sum, because the plaintiffs have already established that they will be irreparably harmed absent an injunction, the defendants cannot contest that the plaintiffs have demonstrated that the balance of equities tip in their favor.

**D. The Public Interest is Served by Issuing a Preliminary Injunction.**

"As long as the affected restaurants comply with New York City reopening guidelines, merely having dense indoor spaces outside of the affected restaurants does not create greater risk of covid-19 transmission inside the spaces of the affected restaurants." (See Declaration of Dr. Jayanta Bhattacharya ¶ 42.)  According to Dr. Bhattacharya, opening New York City restaurants for "indoor dining" is not a threat to the public.

"Though I have read many of the contact tracing studies in the scientific literature that document the most common sources of spread of COVID infection, I am aware of no evidence to suggest that indoor dining is more likely to result in the spread of the COVID-19 virus than the permitted venues such as casinos, malls, bowling alleys, museums, Target stores, Walmart -

including private gatherings- that remain permissible and, in fact, will be more likely in the event that this order remains in effect." (See Declaration of Dr. Jayanta Bhattacharya ¶ 25.)

The Dr. Jay Bhattacharya's expert declaration along with the State's data reveal that "indoor dining" in New York City does not pose a threat to the public.

The public interest is served by the protection of plaintiffs' constitutional rights. *Jolly v. Coughlin,* 907 F. Supp. 63, 65 (S.D.N.Y. 1995) ("defendants have failed to demonstrate that their epidemiological concerns outweigh the strong public interest in following the law, namely RFRA and the Eighth Amendment to the Constitution"); *Roberts v. Neace,* 958 F.3d 409, 416 (6th Cir. 2020) ("treatment of similarly situated entities in comparable ways serves public health interest at the same time it preserves bedrock free-exercise guarantees"). A preliminary injunction is the best — and only — relief available to protect the plaintiffs' rights under the Fourteenth Amendment. Thus, granting the plaintiffs a preliminary injunction protects the plaintiffs, from suffering continued irreparable harm.


**POINT II**

**JACOBSON V. MASSACHUSETTS HAS BEEN LIMITED**

Constitutional rights do not wholly evaporate in times of emergency. See *Jacobson v. Massachusetts,* 197 U.S. 11, 29; 25 S. Ct. 358; 49 L. Ed. 643 (1905). Indeed, the law has long been settled that all essential liberties remain protected at all times, even during the gravest of emergencies. *Bell v. Burson*, 402 U.S. 535, 542; 91 S. Ct. 1586; 29 L. Ed. 2d 90 (1971); *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 164-65; 83 S. Ct. 554; 9 L. Ed. 2d 644 (1963). While States

may implicate police powers to take swift action necessary to protect public health and safety, those powers are not limitless, and are subject to judicial review. See *Jacobson,* 197 U.S. at 31, 38-39; *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1179 (11th Cir. 2020) ('while constitutional rights have limits, so does a state's power to issue executive orders limiting such rights in times of emergency').

A public health crisis state of emergency does not entitle the Governor to cast away constitutional rights and protections full throttle with arbitrary and discriminatory Executive Orders. As outlined above, the Governor's issuance of such patently arbitrary orders under the contrived guise of "mitigating the spread of COVID-19, protecting the public health, and providing essential protections to vulnerable New Yorkers" is undoubtedly an improper constraint on Plaintiffs' protected Constitutional rights. (See *Meyer v. Nebraska*, 262 U.S. 390, 399-400; 43 S. Ct. 625; 67 L. Ed. 1042 (1923).

Here, the reasons why the state's refusal to grant plaintiffs the requested exemption to open *indoor dining in New York City.* does not have a rational basis as discussed above — namely, the state fails to plausibly explain why it treats the plaintiffs differently versus other similarly situated businesses or venues. For those reasons, the shut down of indoor dining in New York City fails the limited Jacobson test.


## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully ask the Court to issue a preliminary injunction enjoining the enforcement of Executive Order 202.81 and issue an Order that New

York City restaurants open indoor dining and follow the pre-December 14, 2020 guidance issued

by the State.


Dated:  Syosset, New York
        January 18, 2021

Respectfully submitted,


**THE MERMIGIS LAW GROUP, P.C.**

/s/James Mermigis
By:_____
James G. Mermigis, Esq.
85 Cold Spring Road, Suite 200
Syosset, New York  11791
516-353-0075
James@MermigisLaw.com

Gail Esses Weiner, Esq.
Lebow & Sokolow LLP
770 Lexington Avenue, 6th Floor
New York, New York  10065
(212) 935-6000


*Attorneys for Plaintiffs*